UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | |
| | ) | Case No.    23-30045 |
| ACJK, Inc., | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| ACJK, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No.    25-03000 |
| | ) | |
| AETNA HEALTH | ) | |
| MANAGEMENT, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |
| | ) | |
| In Re | ) | |
| | ) | Case No.    23-30045 |
| ACJK, Inc., | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| ACJK, Inc. | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No.    25-03008 |
| | ) | |
| CVS HEALTH CORPORATION f/k/a | ) | |
| CVS CAREMARK CORPORATION | ) | |
| f/k/a CAREMARK PCS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## O P I N I O N

Before the Court are motions to dismiss complaint and compel arbitration

filed by the defendants in two separate adversary proceedings commenced by the

debtor in the same underlying bankruptcy case. For the reasons set forth herein,

the motions to dismiss and compel arbitration will be denied and orders will be accordingly entered in each proceeding.

## I.    Factual Background

ACJK, Inc. ("Debtor"), a corporation that operated a pharmacy in Granite City, Illinois, commenced its voluntary Chapter 11 case on January 30, 2023, by filing a bare-bones petition. The Debtor's schedules and other required documents were filed a month later. On Schedule D: Creditors Who Have Claims Secured by Property, the Debtor listed Aetna Health Management, LLC ("Aetna"), Caremark PCS, LLC, and others as holders of claims in unknown amounts secured by the pharmacy's accounts receivable valued at $228,800. The debts were marked by the Debtor as being "disputed." Among the assets listed on Schedule A/B, the Debtor identified potential causes of action for breach of contract and misrepresentation against Aetna, Caremark, and others of unknown values. On its Statement of Financial Affairs, the Debtor identified Aetna and Caremark as recipients of prepetition transfers in unknown amounts described as "offset DIR fees from Debtor's accounts receivable." Aetna and Caremark were similarly identified as having set off debts owed to them by taking unknown amounts from the Debtor's financial account without permission. Neither entity filed a proof of claim in the case.

The Debtor's Second Amended Chapter 11 Plan was confirmed on March 5, 2024. The plan defined "DIR Fees" as "pharmaceutical-related expenses deducted from Debtor's gross sale proceeds by Pharmacy Benefit Managers

(PBM's), including" Aetna and Caremark. The plan was to be implemented in part through a litigation fund comprised of proceeds that might be obtained in pursuing causes of action for the benefit of creditors against the PBMs in relation to DIR fees collected.

On January 29, 2025, the Debtor commenced an adversary proceeding against Aetna, CVS, and several other entities asserting causes of action against each for unauthorized postpetition transfers and constructively fraudulent prepetition transfers under federal and state law based on DIR fees deducted from the Debtor's accounts receivable in the months and years surrounding the petition date.[1] In an order entered February 13, 2025, the Judge previously assigned to the proceeding found that, among other deficiencies, the complaint impermissibly joined defendants in the same cause of action for what appeared to be separate and distinct transactions or occurrences and directed the Debtor to file separate adversary complaints against each defendant within 21 days. After an initial motion to reconsider was denied, the Debtor filed another document labeled as a motion to reconsider or for clarification, asserting that it had a right to file an amended complaint as a matter of course through which it hoped to cure any issues. Consistent with that position, the Debtor filed a first amended complaint which asserted essentially the same causes of action against the same defendants. Several named defendants objected and asked the Court

---

[1] The complaint identified CVS as "CVS Health Corporation f/k/a CVS Caremark Corporation f/k/a Caremark PCS, LLC." The Motion to Dismiss and to Compel Arbitration in adversary case no. 25-03008 was filed by CaremarkPCS Health, LLC asserting that it was the only entity served with summons and that the Motion to Dismiss and to Compel Arbitration was filed only on its behalf. Nevertheless, the amended brief in support of the Motion contends that the arbitration agreement at issue applies equally to CVS Health Corporation as the ultimate parent of Caremark. For purposes of this Opinion, reference to CVS includes Caremark.

to strike the amended complaint. Rather than strike the amended complaint, at a hearing held on May 22, 2025, the Court ordered that the claims be severed so that there would be separate adversary proceedings against each defendant, and the Debtor's attorney was further ordered to pay the filing fee for each of the severed cases. The filing fees were paid, and the result was separate proceedings against each defendant all based on the same first amended complaint.

Relevant to the present proceedings, Count I of the first amended complaint alleges that Aetna and CVS deducted DIR fees in unknown amounts from the Debtor's accounts receivable after the petition date of January 30, 2023. Because the Debtor ceased operations on January 21, 2023, the Debtor alleges that such deductions must have been on account of prepetition claims and are therefore avoidable under §549(a). Count I further seeks an accounting and recovery of amounts avoided under §§542(a) and 550(a).

Counts II and III seek to avoid constructively fraudulent transfers to Aetna under §548(a)(1)(B) and 740 ILCS 160/5, respectively. Count II alleges that, between January 31, 2021, and January 30, 2023, "Aetna offset approximately $127,983.72 in DIR fees from [the Debtor's] Accounts Receivable" for obligations incurred by the Debtor within that period. The Debtor alleges that it received less than a reasonably equivalent value in exchange for the "excessive" DIR fees collected and that it was insolvent at the time or made insolvent thereby. Count II further alleges that Aetna was an insider of the Debtor as defined in the Bankruptcy Code. Count III, in turn, alleges that Aetna "offset approximately $171,595.22 in DIR fees from [the Debtor's] Accounts Receivable" between

January 31, 2019, and January 30, 2023, on account of obligations incurred by the Debtor over the same period. The Debtor alleges it received less than reasonably equivalent value for the described transfers and that the Debtor was "(i) engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, and/or (ii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due."

Counts IV and V similarly seek to avoid constructively fraudulent transfers to CVS under §548(a)(1)(B) and 740 ILCS 160/5, respectively. They make the same allegations against CVS that are set forth in Counts II and III against Aetna, differing only in the amounts of the alleged transfers. In that regard, Count IV alleges that "CVS offset approximately $100,241.43 in DIR fees" in the two-year period ending on the petition date, and Count V alleges that "CVS offset approximately $135,087.86 in DIR fees" in the four years preceding the bankruptcy.

As it happens, Aetna and CVS are represented by the same attorneys who filed substantially identical Motions to Dismiss Plaintiff's Complaint and to Compel Arbitration in each case. The Motions to Compel Arbitration state that they are brought pursuant to the Federal Arbitration Act and purport to reserve the Defendants' rights to seek dismissal under Federal Rule of Civil Procedure 12(b)(6) and Bankruptcy Rule 7012(b) for failure to state a claim upon which relief can be granted should the Court deny their present requests to compel

arbitration. Along with the Motion to Compel Arbitration, the Defendant in each proceeding filed a supporting brief, a supporting declaration signed by a representative of Aetna's purported affiliate and CVS subsidiary, Caremark, and a motion and supporting brief seeking authority to file certain exhibits to the declaration under seal. The exhibits identified for filing under seal were the 2017 Provider Agreement between the Debtor and Caremark and three iterations of Caremark's Provider Manual.[2]

On September 25, 2025, the above-captioned proceedings, along with the other severed actions based on the same complaint, were reassigned to the undersigned Judge. A hearing was set for status on pending matters in each proceeding. Prior to the hearing, the Debtor filed responses in opposition to the Motions to Compel Arbitration in the present proceedings. At the status hearing held October 23, 2025, the Court explained that it is generally disinclined to authorize filings under seal and that the Defendants' requests to do so in these proceedings did not meet the high burden to justify such relief. But the Court

---

[2] According to the Defendants, the Debtor is bound by the Provider Agreement and the Provider Manuals incorporated by reference in the Provider Agreement, all of which apply equally to and govern the Debtor's relationship with both CVS as parent company of Caremark and Aetna as an affiliate of Caremark. None of the documents submitted by the Defendants, however, substantiate the bald assertion that Aetna is an affiliate of Caremark. Although the briefs and declarations offered by Aetna in support of its Motion to Compel Arbitration state as much, nowhere in the Provider Agreement and excerpted portions of the Provider Manuals cited in or attached to its filings is Aetna identified as an affiliate of Caremark. Nor is the term "affiliate" defined in any of those documents. Of course, the Debtor has not disputed the assertion, but, as alluded to by Aetna in its briefs, the party seeking to compel arbitration has the burden of showing that an agreement to arbitrate disputes between the parties exists. *Zurich Am. Ins. Co. v. Watts Indus., Inc.,* 417 F.3d 682, 690 (7th Cir. 2005). And while Aetna cites several cases in its briefs in support of its assertion that the agreement with Caremark also applies to the Debtor's disputes with Aetna as Caremark's affiliate, all those decisions involve entities related to Caremark or CVS by common ownership—none involve or even appear to mention Aetna. Because the Motions to Compel Arbitration will be denied on a different basis, discussion of Aetna's relationship with Caremark is limited to this footnote. But Aetna's failure to show that it is an affiliate of Caremark such that the Caremark agreement would also govern its own disputes with the Debtor could serve as an independent basis for denying Aetna's Motion to Compel Arbitration.

also said it would give the Defendants time to supplement their motions to file under seal and suggested the parties exchange the documents at issue and see if they could stipulate to relevant portions being entered on the public docket to alleviate the need for filing anything under seal. Regarding the Debtor's response to any supplemental filings by the Defendants, counsel for the Debtor said the opportunity would be appreciated but he did not want a lack of response to be construed as conceding any substantive issues.

Rather than supplementing or amending their requests to file under seal, on November 6, 2025, Aetna and CVS filed amended briefs and declarations in support of their Motions to Compel Arbitration which appeared to include the relevant portions of documents they had asked to file under seal. Along with the amended briefs and declarations, Aetna and CVS filed notices stating their intent to withdraw the motions to file under seal without prejudice. The Debtor filed nothing in either case in response to the amended brief and declaration.

The Court having reviewed and considered the parties' arguments along with the entire case record in each proceeding, the matter is ready for decision.


## II.    Jurisdiction

This Court has jurisdiction over proceedings "arising under title 11, or arising in or related to cases under title 11" pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Southern District of Illinois have been referred to the bankruptcy judges. SDIL-LR Br1001.1; *see* 28 U.S.C. §157(a). Matters concerning the administration of the estate, proceedings to

determine, avoid, or recover fraudulent conveyances, and other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship are core proceedings. 28 U.S.C. §157(b)(2)(A), (H), (O).

While statutorily core, there is some disagreement about whether fraudulent conveyance actions are constitutionally core in the wake of the Supreme Court's decisions in *Stern v. Marshall*, 564 U.S. 462, 493 (2011), and *Executive Benefits Insurance Agency v. Arkinson*, 573 U.S. 25, 37-38 (2014). *Compare Maxwell v. United States (In re Horizon Group Mgmt., LLC),* 617 B.R. 581, 585 (Bankr. N.D. Ill. 2020) (finding fraudulent transfer action under §548 constitutionally core), *with Brandt v. FDIC (In re Equip. Acquisition Res., Inc.),* 560 B.R. 501, 504 (Bankr. N.D. Ill. 2016) (finding that state-law fraudulent transfer claims as well as §548 claims are not constitutionally core). But the prevailing opinion in this Circuit is that avoidance of fraudulent transfers under §548 are constitutionally core. In any event, the first amended complaint also asserts state-law fraudulent conveyance causes of action against each Defendant which do not arise exclusively under the Bankruptcy Code and do not strictly arise in a bankruptcy case, and this Court is therefore exercising "related to" jurisdiction in these proceedings. Absent consent of the parties, the Court's authority to enter final judgment on at least the state-law fraudulent conveyance actions is limited. *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 669 (2015); *Exec. Benefits*, 573 U.S. at 37-38; *Stern*, 564 U.S. at 493; 28 U.S.C. §157(c).

Here, the Defendants have not consented to entry of final orders on the merits of the claims asserted against them. Even so, this Court has authority to enter orders on preliminary matters to the extent they do not constitute a final adjudication on the merits of underlying causes of action over which the Court does not have constitutional authority to enter a final order. *See Lordstown Motors Corp. v. Hon Hai Precision Indus. Co. (In re Nu Ride Inc.),* 666 B.R. 510, 512 (Bankr. D. Del. 2024). The authority to enter orders on such preliminary matters includes determinations of whether an enforceable arbitration clause governs. *Id.*; *Johnson v. S.A.I.L. LLC (In re Johnson),* 649 B.R. 735, 741 (Bankr. N.D. Ill. 2023); *In re EPD Inv. Co.,* 821 F.3d 1146, 1151 (9th Cir. 2016).

## III.    Legal Analysis

The Federal Arbitration Act ("FAA") was passed with the purpose of "overrul[ing] the judiciary's longstanding refusal to enforce agreements to arbitrate" and "ensur[ing] judicial enforcement of privately made agreements[.]" *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219-20 (1985). "But the FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983)). "The federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Morgan*, 596 U.S. at 418 (citations omitted). Even so, the FAA requires that arbitration agreements be rigorously

enforced by federal courts. *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987).

With that background, the starting point in deciding whether to compel arbitration is to determine whether there is an agreement requiring arbitration of disputes. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626 (1985); *BCS Ins. Co. v. Wellmark, Inc.*, 410 F.3d 349, 351-52 (7th Cir. 2005). The disputes at issue must also be within the scope of the arbitration agreement. *Zurich Am. Ins. Co.*, 417 F.3d at 687. Once it is established that the parties' disputes are covered by an arbitration agreement, the court must determine whether there is a basis for denying enforcement of such agreement notwithstanding the clear mandate of the FAA. "Like any statutory directive, the [FAA's] mandate may be overridden by a contrary congressional command." *McMahon*, 482 U.S. at 226. Such contrary command, however, must be evident from the text of a statute or "from an inherent conflict between arbitration and the statute's underlying purposes." *Id.* at 227.

In opposing arbitration of the claims asserted in each of the present proceedings, the Debtor focuses its arguments on whether there is an inherent conflict between the FAA and the Bankruptcy Code.[3] Before reaching the

---

[3] In its responses to the Motions to Compel Arbitration, the Debtor said that it did not have access to and therefore had not seen the Caremark Provider Agreement and Provider Manuals repeatedly referenced in but not attached to the Defendants' Motions. After being given an opportunity to provide the documents to the Debtor and file supplements to their motions to file under seal, the Defendants instead filed amended briefs in support of their Motions to Compel Arbitration incorporating the relevant language of the documents previously referenced along with notices of withdrawal of the motions to file under seal. The Debtor did not file responses to the amended briefs. Counsel for the Debtor previously expressed that he was not inclined to oppose the motions to file under seal but asked the Court not to construe a lack of response as conceding any substantive issues in the cases. Although the Court does not construe the lack of response to the amended briefs as the Debtor conceding the Motions to Compel Arbitration, it will assume that the existence of an arbitration agreement with Caremark is not disputed.

inherent conflicts test, however, the Court must determine that the parties here are bound by the agreement. The party seeking to compel arbitration "bears the burden of offering sufficient evidence to allow a factfinder to conclude that the parties agreed to arbitrate" the subject disputes. *Campos v. Tubi, Inc.*, 716 F. Supp. 3d 623, 630 (N.D. Ill. 2024) (citation omitted) (internal quotation marks omitted); *see also Zurich Am. Ins. Co.,* 417 F.3d at 687.

The Defendants contend that the arbitrator rather than the Court must decide threshold arbitrability questions because the agreement incorporates American Arbitration Association rules which, in turn, provide for arbitrators having power to rule on their own jurisdiction, including questions of scope and validity of agreements. But courts have held that an agreement must "clearly and unmistakably" provide that power to the arbitrator; more than the presence of expansive arbitration language is needed to remove the issue from judicial determination. *Peabody Holding Co. v. United Mine Workers of Am.,* 665 F.3d 96, 101-02 (4th Cir. 2012). Here, the excerpted language from the agreement does provide that "[t]he arbitrator(s) shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of the agreement to arbitrate[.]" But it is axiomatic that an agreement to arbitrate— and thus any decision on any issue by an arbitrator—can only bind the parties to the agreement, and a party generally cannot be required to submit to arbitration any dispute which that party has not agreed to submit. *Fort v. Kibbey (In re Oaktree Med. Ctr., P.C.),* 640 B.R. 649, 658 (Bankr. D.S.C. 2022) (citing *Am. Bankers Ins. Group, Inc. v. Long,* 453 F.3d 623, 626-27 (4th Cir. 2006)); *see also*

*Granite Rock Co. v. Int'l Bhd. of Teamsters,* 561 U.S. 287, 296 (2010) (where dispute at issue is one of contract formation, it is generally for courts to decide) (citations omitted); *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 941-47 (1995) (court should decide whether an arbitration clause applied to a party who "had not personally signed" the document containing it).

As noted, there appears to be no dispute that the Debtor entered into a prepetition arbitration agreement with Caremark. But the parties overlook an important fact: because a trustee was not appointed in the Debtor's Chapter 11 case, the Debtor has acted as a debtor in possession in the bankruptcy case with generally all the rights and duties of a trustee. *See* 11 U.S.C. §§1101, 1107(a).[4] The Debtor has thus worn two hats in its bankruptcy case, that of "debtor" acting in its personal capacity and that of "debtor in possession" acting as a fiduciary of the bankruptcy estate. *In re Johnston*, 2013 WL 1337757, at *2 n.1 (Bankr. S.D. Ind. Mar. 29, 2013). Whether the Debtor is bound by the prepetition arbitration agreement turns on the capacity in which the Debtor is suing the Defendants.

When a trustee asserts a cause of action derived from the debtor's rights, he stands in the "shoes" of the debtor and would be bound by an arbitration clause in a prepetition agreement to the same extent as would the debtor.

---

[4] Although the Debtor's confirmed plan provided for all estate property to vest back to the Debtor upon confirmation—raising a question of whether the Debtor continues to act as debtor in possession—it also contemplated the Debtor pursuing causes of action against PBMs for the benefit of its creditors. Courts within this Circuit have found similar retention language sufficient to establish standing to pursue causes of action post-confirmation, and the Defendants raised no objections on that basis. *See KHI Liquidation Trust v. Wisenbaker Builder Svs., Inc. (In re Kimball Hill, Inc.),* 449 B.R. 767, 773-78 (Bankr. N.D. Ill. 2011); *Brandt v. PlainsCapital Leasing, LLC (In re Equip. Acquisition Res., Inc.)*, 483 B.R. 823, 828-32 (Bankr. N.D. Ill. 2012).

*Oaktree Med. Ctr.,* 640 B.R. at 658-59 (citing *In re MF Glob. Holdings Ltd.*, 571 B.R. 80, 89-90 (Bankr. S.D.N.Y. 2017), and *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 885 F.2d 1149, 1153 (3d Cir. 1989)). A debtor in possession asserting claims derived from the debtor's prepetition rights would likewise be bound by the debtor's agreement to arbitrate disputes. But when a trustee or debtor in possession asserts claims belonging to the trustee or creditors, the trustee or debtor in possession is no more bound by the debtor's arbitration agreement than any other who was not a party to that agreement. *See Oaktree Med. Ctr.,* 640 B.R. at 659; *Bethlehem Steel Corp. v. Moran Towing Corp. (In re Bethlehem Steel Corp.),* 390 B.R. 784, 790-92 (Bankr. S.D.N.Y. 2008); *Cohen v. Ernst & Young, LLP (In re Friedman's, Inc.),* 372 B.R. 530, 544-45 (Bankr. S.D. Ga. 2007); *Hays*, 885 F.2d at 1155.

Turning to the claims asserted against the Defendants here, they consist of: (1) a count against each relating to postpetition transfers seeking an accounting and turnover under §542(a) of amounts deducted from the Debtor's accounts receivable as well as the avoidance and recovery of such transfers under §§549(a) and 550(a); (2) a count against each seeking avoidance of prepetition transfers as constructively fraudulent under §548(a)(1)(B) and their recovery under §550(a); and (3) a count against each seeking avoidance of prepetition transfers as constructively fraudulent under the Illinois Uniform Fraudulent Transfer Act and §541(a) and their recovery under §550(a).[5]

---

[5] Although not cited by the Debtor, §544(b) provides the authority for a trustee to step into the shoes of a creditor to avoid a transfer under nonbankruptcy law for the benefit of all creditors. It is apparent that this is the avenue through

Taken at face value, the causes of action asserted against the Defendants are "avoidance actions" which several courts have recognized as not being derived from the debtor's rights and obligations and therefore not subject to mandatory arbitration agreements executed by the debtor. *See, e.g., Bethlehem Steel Corp.,* 390 B.R. at 791-92 (statutory avoidance claims belonging exclusively to trustee or debtor in possession are asserted on behalf of creditors who were not parties to agreement and therefore are not subject to arbitration); *Friedman's, Inc.,* 372 B.R. at 546-47 (§§544 and 548 are "Code-derived creditor claims and are not arbitrable"); *In re Gandy*, 299 F.3d 489, 495-97 (5th Cir. 2002) (causes of action under §§544(b), 548, and 550 not derivative of debtor but rather belong to trustee for benefit of creditors); *Hays*, 885 F.2d at 1155 (claims asserted by trustee under §544(b) not derivative of debtor but belong to creditors who, along with trustee, are not parties to and thus not bound by debtor's agreement to arbitrate); *see also* Robert M. Lawless, *Reframing Arbitration & Bankruptcy*, 96 AM. BANKR. L.J. 701, 740-43 (2022) ("avoidance actions" plainly include remedies under Chapter 5 of Code for turnover, preference, and fraudulent transfer but also include state-law fraudulent transfer claims). Further, the Debtor's request for accounting under §542 stems from a trustee's statutory powers. *Henderson v. Legal Helpers Debt Resol., LLC (In re Huffman),* 486 B.R. 343, 359 (Bankr. S.D. Miss. 2013).

---

which relief is being sought, and the Debtor's failure to cite §544 as the basis for the claim asserted does not prevent the Court from construing it as such. *See King v. Kramer*, 763 F.3d 635, 642 (7th Cir. 2014) (citations omitted).

And while none of the arbitration decisions involve actions to avoid postpetition transfers under §549, such claims are similarly "Code-derived" claims belonging exclusively to the trustee for the benefit of the bankruptcy estate. *David Cutler Indus., Ltd. v. Bank of Am. (In re David Cutler Indus., Ltd.),* 502 B.R. 58, 71-72 (Bankr. E.D. Pa. 2013) (noting difference between claims brought by trustee as successor to debtor and claims asserted pursuant to trustee's avoidance powers as representative of creditors, including under §549); *In re Worldcom, Inc.,* 401 B.R. 637, 646-47 (Bankr. S.D.N.Y. 2009) (§549 avoidance powers belong to trustee, not by virtue of status as debtor's successor but rather as representative of creditors to whom such claims belong). This Court therefore draws no distinction between avoidance actions under §549 and other Code-based avoidance actions for present purposes and further agrees with those courts that have concluded that avoidance actions are not subject to a debtor's prepetition arbitration agreement. But that is not the end of the inquiry.

The Defendants contend that the causes of action asserted against them are simply contractual disputes dressed up as avoidance claims. Similar arguments have been made in other courts with mixed results. *Compare Friedman's, Inc.,* 372 B.R. at 545-46 (rejecting argument that fraudulent conveyance claims should be treated as breach of contract or malpractice claims for purposes of compelling arbitration), *with Trefny v. Bear Stearns Sec. Corp.,* 243 B.R. 300, 320-23 (S.D. Tex. 1999) (concluding that trustee's causes of action were improperly characterized as turnover and fraudulent conveyance and that trustee was therefore bound by debtor's prepetition arbitration agreement).

Despite their divergent outcomes, both cases seem to agree with the basic principle that mere labels and citations to the statute do "not conclusively establish that the claims are in fact claims derived from the Code." *Friedman's, Inc.,* 372 B.R. at 545 (citing *Trefny*, 243 B.R. at 320-23). Nevertheless, this Court, like the court in *Friedman's, Inc.*, is not persuaded that the causes of action asserted here should be recharacterized as state-law contract or tort claims. *Friedman's, Inc.*, 372 B.R. at 546.

In *Trefny*, the court found that the allegations did not support an action for turnover under §542 because the underlying claims were neither liquidated nor undisputed, making the Code provision inapplicable. *Trefny*, 243 B.R. at 320. The court likewise found that the allegations did not support a claim under §548 because the property alleged to have been transferred was not the debtor's but rather was property of the debtor's customers. *Id.* at 321-23. In *Friedman's, Inc.*, on the other hand, the court seemed more circumspect in evaluating the adequacy of the claims asserted, noting first that the trustee had pleaded the basic elements of fraudulent conveyance and that the defendant had not shown that the complaint failed to state a claim. *Friedman's, Inc.*, 372 B.R. at 546. The court further reasoned that the existence of a common set of facts that could support both a fraudulent conveyance claim and a breach of contract claim did "not prevent the Trustee from pleading both claims in his complaint" and did not alter the nature of the fraudulent conveyance actions as "Code-derived creditor claims" that are not arbitrable. *Id.* at 546-47.

In evaluating the Defendants' arguments here, the Court is conscious of the fact that the Motions before it do not seek dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. This is important context. As in *Friedman's, Inc.*, the Defendants here have not shown—let alone meaningfully argued—that the Debtor failed to state a claim for the causes of action asserted. The Defendants merely contend that the only disputes raised "concern the terms of the Provider Agreement and Provider Manual and [the Defendants'] conduct pursuant thereto." But the fact that the claims asserted involve allegations concerning the Defendants' contractual relationship with the Debtor does not bar the Debtor from pursuing relief through statutory avoidance powers. *Id.*

In the absence of a formal challenge under Rule 12(b)(6), this Court is reluctant to evaluate the adequacy of the amended complaint under a Rule 12(b)(6) standard with the same rigor as if a motion were filed on that basis. That reluctance is supported by case law, with courts recognizing they have discretion to dismiss a complaint *sua sponte* but often reserving the exercise of that discretion for frivolous or transparently defective claims. *See Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir. 2003); *cf. Choi v. 37 Parsons Realty LLC*, 642 F. Supp. 3d 329, 334-36 (E.D.N.Y. 2022) (collecting cases limiting *sua sponte* dismissal under 12(b)(6) and applying reasoning to the court's *sua sponte* review of complaint's adequacy in default judgment context). Thus, the Debtor's characterization of its causes of action as avoidance claims should only be

disregarded for purposes of compelling arbitration if the claims are clearly meritless.

The Court cannot say the claims are frivolous or that they are patently defective. The Debtor has arguably pleaded the basic elements for the avoidance actions asserted. That is not to say that the amended complaint is without problems or that all the claims asserted would survive a motion to dismiss under Rule 12(b)(6) if filed. And, of course, whether the Debtor will ultimately be able to meet its burden of proof on the elements of those claims is an entirely different question. But for present purposes, the Debtor has plainly alleged that the Defendants deducted DIR fees from the Debtor's accounts receivable. Some of those deductions are alleged to have occurred after the filing of the bankruptcy petition but on account of prepetition transactions and without authorization from the Court, consistent with basic elements of §549. Other deductions are alleged to be excessive and to have occurred while the Debtor was insolvent within the applicable prepetition timeframes for avoidance under §548 and the Illinois Uniform Fraudulent Conveyance Act. Neither the Debtor's failure to identify each deduction and the specific amounts nor the fact that the deductions may have been provided for by contract precludes relief. *Kind Operations, Inc. v. Cadence Bank (In re PA Co-Man, Inc.),* 644 B.R. 553, 626-27 (Bankr. W.D. Pa. 2022) (exercising rights under contract not *per se* bar to fraudulent transfer claim); *Rizack v. Starr Indem. & Liab. Co. (In re Grandparents.com),* 614 B.R. 625, 631-32 (Bankr. S.D. Fla. 2020) (recognizing that value includes satisfaction of debt but finding that payment in accordance with contract does not insulate the

transaction from claim for constructive fraud); *In re Mack Indus. Ltd.,* 2025 WL 875209, at *2 (N.D. Ill. Mar. 20, 2025) (finding payment to contractor per agreement was reasonably equivalent value but noting that trustee made no claim that the invoiced amounts were unfair or unreasonable for the work done).

The causes of action asserted against the Defendants are Code-derived claims belonging to the trustee or creditors who are not parties to the arbitration agreement at issue here and would not be bound by such agreement. And because the Debtor is exercising the statutory powers of trustee, it stands in the shoes of the trustee and creditors and is likewise not bound by the arbitration agreement for purposes of the claims asserted in these proceedings. The Motions to Compel Arbitration will therefore be denied.

In making its determination, the Court is aware of the many cases focused on whether there is an inherent conflict between the FAA and a competing applicable statute and, particularly in bankruptcy matters, the core versus noncore nature of claims. But such cases are premised on an assumption—if not an affirmative finding—that the party sought to be compelled to arbitrate its disputes was bound as a party to the underlying arbitration agreement. Because this Court finds that the Debtor standing in the shoes of the trustee and creditors is not bound by the arbitration agreement, there is no need to analyze whether there exists an inherent conflict between the FAA and the underlying purposes of the Bankruptcy Code. *See, e.g., Friedman's, Inc.*, 372 B.R. at 541-44 (applying the *McMahon* test to debtor-derived claims but not Code-derived creditor claims it concluded were not arbitrable).

Further, while the core/noncore distinction can help inform the inherent conflict analysis, it is not determinative of whether a claim must be sent to arbitration. *Johnson*, 649 B.R. at 748-49. To be sure, several courts have placed heavy emphasis on the nature of claims as core or noncore to categorically remove "noncore" matters from bankruptcy court discretion, but that approach has been criticized as an oversimplification in favor of a bright line rule that arose from cherry-picked language which today carries significance and meaning different from what it once did. *See Reframing Arbitration & Bankruptcy*, 96 AM. BANKR. L.J. at 707-713 (discussing the unintended history of the rule and the problems with marrying it to the current scheme for bankruptcy court jurisdiction); *Johnson*, 649 B.R. at 746-47 (Whether a claim is core or noncore "should not be used as a bright line in determining the enforceability of arbitration clauses."). *See also EPD Inv. Co.*, 821 F.3d at 1150-51 (that claim was not constitutionally core under *Stern* and its progeny did not dictate outcome because claim was still statutorily core and denial of arbitration was not final judgment). To the extent bankruptcy decisions on arbitration turn on the core versus noncore nature of the claims asserted, they are inapt because the claims at issue in these proceedings are at least statutorily core and, in any event, are brought on behalf of creditors who are not parties to and not bound by the Debtor's arbitration agreement. *Id.* at 1150-52.

## IV.    Conclusion

The Defendants' Motions to Compel Arbitration will be denied. The claims asserted against the Defendants are derived from the Bankruptcy Code and may only be brought by a trustee or debtor in possession on behalf of the Debtor's creditors. As neither the creditors nor the trustee in whose shoes the Debtor stands were parties to the Debtor's prepetition agreement to arbitrate disputes, they are not bound by the agreement and the Debtor therefore cannot be compelled to arbitrate the claims asserted on their behalf.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

ENTERED: February 23, 2026

/s/ Mary P. Gorman
_____
UNITED STATES BANKRUPTCY JUDGE